UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| PATRICIA RUSH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, *Commissioner of* )<br>*Social Security* )<br>)<br>Defendant. )<br>) | Civil No. 3:23-cv-00081-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

Patricia Rush seeks judicial review of an administrative decision denying her claim for disability insurance benefits.  Ms. Rush brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.  Ms. Rush also brings claims under 42 U.S.C. § 1983, alleging that her due process rights were violated. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Rush's Motion for Summary Judgment [R. 14] and **GRANT** the Commissioner's [R. 19].  The Court will also **GRANT** the Commissioner's Motion to Dismiss as to Ms. Rush's § 1983 claim [R. 5] and will **DENY AS MOOT** Ms. Rush's Motion to Hold in Abeyance [R. 10.]

**I**

Plaintiff Patricia Rush filed a Title II application for Disability Insurance Benefits and a Title XVI application for Supplemental Security Income on June 27, 2008, alleging disability beginning October 1, 2007.  [R. 7 at 778.]  Ms. Rush's case then took a winding road to today's litigation.  In the first round of proceedings, Ms. Rush – represented by infamous attorney Eric C. Conn – was approved for disability benefits on January 2, 2009, by ALJ David B. Daugherty.  *Id*.  Following the discovery of Mr. Conn's widespread fraud, the SSA redetermined Ms. Rush's

case, with a new decision issued on April 8, 2016.  *Id*.  Following internal and external appeals, Ms. Rush was provided the decision at issue in this case, with Administrative Law Judge Sandra Wallis determining that Ms. Rush was ineligible for benefits on November 8, 2022.  Notably this decision took place after an order to remand by this Court following the Sixth Circuit's decision in *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018).  *Id*. at 778-779.  The Appeals Council denied Ms. Rush's request for review of this most recent decision, which led her to file the instant Complaint with this Court, seeking review under 42 U.S.C. § 405(g).  [R. 1.]  Both parties have now filed motions for summary judgment which are ripe for review.  [R. 14; R. 19.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis.  *See* 20 C.F.R. § 416.920.  If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops.  *Id.* § 404.1520(a)(4).  First, if a claimant is performing substantial gainful activity, she is not disabled.  *Id.* § 404.1520(a)(4)(i).  Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled.  *Id.* § 404.1520(ii).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545.  Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work.  *Id.* § 404.1520(a)(4)(iv).  If so, she is not disabled.  *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

**A**

The ALJ completed the five-step analysis to determine Ms. Rush's disability status. [R. 7 at 782-789.] She first determined that Ms. Rush had not engaged in substantial gainful employment during the period in which she claimed to be disabled. *Id.* at 782. Second, the ALJ found that Ms. Rush had the following severe impairments: degenerative disc disease (DDD) of the thoracic spine, cervical spine, and lumbar spine. *Id.* The ALJ also looked at evidence concerning Ms. Rush's reflex sympathetic dystrophy but determined that this impairment was non-severe. *Id.* But at step three, the ALJ found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." *Id.* at 783.

Before proceeding to step four, the ALJ fashioned Ms. Rush's RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that the claimant:

> had the residual function capacity to perform light work as defined in 20 CFR 404.1567(b), such that: She could lift, carry, push, and pull up to twenty pounds occasionally and up to ten pounds frequently; she could stand and walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday; she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; she could occasionally stoop, kneel, crouch, or crawl; she could occasionally push or pull with the right lower extremity; she could frequently reach overhead with both upper extremities; and, she must have avoided unprotected heights, hazardous machinery, and vibrations.

[R. 7 at 783.]

To make this finding, the ALJ first determined that Ms. Rush's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id*. at 784. However, the ALJ found that Ms. Rush's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. *Id*. The ALJ considered reports relevant to Ms. Rush's period of claimed disability (prior to her January 2, 2009 disability determination), including medical opinions from Dr. Stauffer, Dr. Edwards, Dr. Swan, Dr. Aranas, Dr. Stodola, Dr. Perritt, Ms. Rush's prior testimony, a third-party function report from Ms. Rush's son Nicholas Lecour, and a 2006 letter from Dr. Taraschi suggesting Ms. Rush should be excused from jury duty due to her DDD. *Id*. at 784-787. The ALJ did not consider evidence in the form of a report from Dr. Huffnagle as the ALJ found there was "reason to believe that fraud or similar fault was involved in the submission of evidence from Dr. Huffnagle," due to Dr. Huffnagle's connection to the Eric C. Conn fraud scheme. *Id*. at 779.

Next, the ALJ proceeded to step four, concluding Ms. Rush was unable to perform past relevant work as a parts puller and billing collections clerk. *Id*. at 788. Proceeding to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs Ms. Rush can perform in the national economy, such as price marker, routing clerk, and order caller. *Id*. at 789. Therefore, the ALJ found that Ms. Rush was "not under a disability" from the relevant period of October 1, 2007, through January 2, 2009. *Id*.

B

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*,

321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole.  *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *Id.* at 714.

Ms. Rush primarily contends that the ALJ improperly disregarded the medical opinion of Dr. Huffnagle "due to his identification as one of the co-conspirators in the Conn fraud scheme." [R. 14 at 14.]  Ms. Rush points to the Sixth Circuit's decision in *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018), in support of her contention that she was not given an opportunity to rebut the ALJ's assertion that the evidence provided by Dr. Huffnagle was tainted by fraud. [R. 14 at 14.]  Along similar lines she also claims that the ALJ in this case was "not a neutral decisionmaker." *Id*.  Ms. Rush also claims that the ALJ improperly disregarded the medical

5

opinion of Dr. Taraschi. *Id*. at 14-15. In Ms. Rush's view, Dr. Taraschi was her treating physician and therefore his opinion was entitled to controlling weight. *Id*. Ms. Rush also appears to briefly suggest that the ALJ also afforded an improper lack of weight to the opinion of Dr. Aranas. *Id*.

1

The Social Security Administration is statutorily obligated to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B). The reason to believe standard "requires more than mere suspicion, speculation, or a hunch, but it does not require a preponderance of evidence." SSR 22-2p(B)(5), 2022 WL 2533117, at *4 (May 17, 2022); *see Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 811 (6th Cir. 2018) ("Congress plainly intended to authorize reassessments of initial determinations without proof of fraud."); *Jaxson v. Saul*, 970 F.3d 775, 778 (7th Cir. 2020) ("The ALJ need not find that fraud is more likely than not."). The reason-to-believe standard is therefore a "very low bar." *Hicks*, 909 F.3d at 820 (Rogers, J., dissenting).

In *Hicks* the Sixth Circuit confronted the appropriate procedural protections due to Social Security claimants whose evidence was rejected by ALJs under suspicion of fraud. *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018). The *Hicks* Court held that those claimants "must have an opportunity to 'rebut the Government's factual assertions before a neutral decisionmaker.'" *Id*. at 799 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)).

In this case, the ALJ rejected the report of Dr. Huffnagle, a report which supported Ms. Rush's claim of disability. [R. 7 at 779.] The ALJ found that attorney Eric Conn had represented Ms. Rush during her initial application process, that the report from Dr. Huffnagle was in connection with that representation, and that Ms. Rush's original successful application

6

was approved on-the-record by ALJ David B. Daugherty. *Id*. Dr. Huffnagle and ALJ Daughtery were both identified as members of Mr. Conn's fraud scheme and the ALJ specifically identified the relevant similarities between Mr. Conn's fraud scheme and the facts of this case. *Id*. Ms. Rush now contends that this rejection was improper and that she was never given the opportunity to rebut that rejection. [R. 14 at 14.] This assertion is unsupported by the record.

As an initial matter, the "reason to believe" standard is not a high threshold for the ALJ to satisfy. And courts considering similar cases stemming from Mr. Conn's fraud scheme have routinely found for the SSA in almost identical situations. In *Maynard v. O'Malley*, No. 7:24-CV-00003-EBA, 2024 WL 4308436 (E.D. Ky. Sept. 26, 2024), the court addressed the concerns of another claimant whose report from a Conn-connected doctor was rejected. The court emphasized that the case had "all the hallmarks of the typical Conn/Daugherty fraud scheme" and ultimately upheld the ALJ's decision to exclude the potentially fraudulent medical opinion. *Id*. at *5. Likewise, in *Ison v. Kijakazi*, No. CV 5:23-054-DCR, 2023 WL 4411026 (E.D. Ky. July 7, 2023), the court confronted almost the exact same scenario. And again the court supported the ALJ's determination, this time as to a report by the very same Dr. Huffnagle whose report is at issue in this case. *Id*. at *4. This Court now joins those courts. The ALJ's decision in this case to exclude Dr. Huffnagle's report satisfied the reason-to-believe standard, especially given Dr. Huffnagle's intimate connection with a widespread fraudulent scheme conducted under eerily similar circumstances as Ms. Rush's own case.

Ms. Rush also suggests that she was not given the opportunity to rebut the ALJ's assertion that Dr. Huffnagle's report was fraudulent. [R. 14 at 14.] Not so. This hearing was held as a response to the decision in *Hicks* and the ALJ in this case did in fact provide Ms. Rush an opportunity to provide a rebuttal. In her opening statement the ALJ emphasized that Ms.

7

Rush could "make any arguments…about whether or not there is reason to believe that fraud or similar fault was involved in your case or not." [R. 7 at 801.]  Ms. Rush's attorney took the ALJ up on that offer.  Following a brief discussion as to why the case was remanded following the Sixth Circuit's *Hicks* decision, Ms. Rush's attorney stated

> Well so, as far as the issue that they sent it, you know, remanded it on as far as whether or not there's reason to believe that Dr. Huffnagle's – there was fraud involved in that.
>
> It's really hard to determine that at this point, I think, since [Huffnagle] died before he could ever be questioned as to was that like always that he didn't really examine the claimants or were there just some of them that, you know, he applied that to. So I don't know that I can argue with the OIG's determination that they're -- it's reasonable to think [there] may have been, but I don't think that's how it's worded.
>
> It says…is reasonable to believe that there was in that his opinion does give specific measurements and that he did to range of motion testing. And it does look like there are things that are specific to [plaintiff] that were addressed in that

[R. 7 at 801, 807-808.]  Ms. Rush very much got the opportunity to address the issue of fraud as applied in her case, as required by *Hicks*, and her attorney took advantage of that opportunity. The *Hicks* decision itself noted that the procedural safeguards it adopted "do[] not mean that the SSA must allow plaintiffs to rely on fraudulent evidence in their redetermination hearings." *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 799 (6th Cir. 2018).  As the Sixth Circuit stated in *Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918 at * 4 (6th Cir. May 6, 2024), "[b]ecause she had the chance to rebut the … assertion of fraud and to present evidence supporting her claim, [Rush] has not demonstrated that the procedures employed at her hearing violated her due process rights."

## 2

Ms. Rush also challenges the ALJ's decision to disregard the report of Dr. Taraschi.  [R. 14 at 14-15.]  She contends that Dr. Taraschi's opinion should have been giving controlling

weight as her "treating physician." *Id*; *see* 20 C.F.R. § 404.1527(c)(2). As the Commissioner points out, it is not immediately clear that Dr. Taraschi even qualifies as Ms. Rush's treating physician. [R. 19 at 12.] While Dr. Taraschi and Ms. Rush had an "ongoing treatment relationship" for several years prior to her application for disability, the relationship itself ended around a year and half before she claimed she was disabled. [R. 7 at 72.] However, it ultimately matters not what status Dr. Taraschi held as the ALJ gave good reasons in support of giving Dr. Taraschi's opinion no weight. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") Notably controlling weight is only given to a treating source's opinion if the SSA finds "that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Id*.

Consider the contents of Dr. Taraschi's opinion. The opinion itself is brief and refers only to Ms. Rush's ability to complete jury duty:

> [Ms. Rush] has been in my care for more than three years. She has a thoracic degenerative disc disease. This is an ongoing problem. Please excuse her from jury duty beginning April 10, 2006.

[R. 7 at 721.] In evaluating Dr. Taraschi's opinion, the ALJ emphasized that "there is no presented record to support this opinion and Dr. Taraschi did not provide a functional analysis of the beneficiary's/recipient's condition." *Id*. at 787. To the extent that Dr. Taraschi offered a relevant opinion he failed to provide any form of objective support as required by the regulations. "If a treating source opinion is not supported by objective medical evidence, then the ALJ is entitled to give the opinion less weight as long as he sets forth good reasons for the weight given the treating source opinion." *Ross v. Astrue*, No. 2:09-177, 2010 WL 5233722, at

9

\*3 (E.D. Ky. Dec. 16, 2010); *see also Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 600 (6th Cir. 2018) (ALJ properly gave little weight to an opinion that was vague and unclear).  Dr. Taraschi's opinion was extremely short, unaccompanied by objective evidence, and related only to Ms. Rush's ability to sit for jury duty.  The ALJ properly disregarded it.

3

The Court now turns to the Commissioner's Partial Motion to Dismiss.  [R. 5.]  In her Complaint, Ms. Rush also asserted claims under 42 U.S.C. § 1983, alleging violations of her due process rights.  [R. 1 at 8.]  It is well established law that, as a general matter, "[t]he federal government and its officials are not subject to suit under [§ 1983]."  *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016) (quoting *Conner v. Greef,* 99 Fed. App'x 577, 580 (6th Cir. 2004)).  This is because "federal officials typically act under color of *federal* law," while § 1983 covers actions taken under color of *state* law.  *Id*.  Therefore, Ms. Rush's claims under § 1983 are appropriately dismissed under Federal Rule of Civil Procedure 12(b)(6).

While her pleadings are not a model of clarity, in her Complaint Ms. Rush also requests relief in the form of a preliminary injunction.  [R. 1 at 9.]  She suggests in her Response to the Commissioner's Motion to Dismiss that "[t]he Plaintiff in this action has previously filed for Preliminary Injunction" and later cites to the "reasons previously submitted in the Preliminary Injunction. (R.5)."  The Docket Entry at 5 is the Commissioner's Motion to Dismiss and the Court can find no further record of any motions by Ms. Rush to develop her theory as to why she needs a preliminary injunction.  Preliminary injunctions are "extraordinary and drastic remedies … and that is why the plaintiff bears the burden to justify relief."  *O'Toole v. O'Connor*, 802 F.3d

783, 788 (6th Cir. 2015). Ms. Rush has not presented any arguments or evidence to support that burden. The Court, therefore, declines to issue a preliminary injunction.

In a bit of further housekeeping, the Court turns to Ms. Rush's Motion to Hold in Abeyance. [R. 10.] In her Motion, Ms. Rush asked the Court to hold these proceedings in abeyance until the Sixth Circuit announced its decision in *Sexton v. Commissioner of Social Security*. The Sixth Circuit released its decision in *Sexton* on May 6, 2024, *Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918 (6th Cir. May 6, 2024). Ms. Rush's Motion is therefore moot.

### III

Ms. Rush objects to the ALJ's decision to disregard several medical opinions she offered in support of her disability claim. While the Court sympathizes with Ms. Rush's difficulties, its role is not to retry her case. Instead, the Court finds that substantial evidence supported the ALJ's opinion. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment **[R. 14]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 19]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

2. The Commissioner's Partial Motion to Dismiss as to Plaintiff's § 1983 claims **[R. 5]** is **GRANTED**; and

3. Plaintiff's Motion to Hold in Abeyance **[R. 10]** is **DENIED AS MOOT**.

This the 21st day of October 2024.



Gregory F. Van Tatenhove
United States District Judge

11